**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STUDIO A ENTERTAINMENT, INC.,** | ) | **Case No. 1:06cv2496** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| vs. | ) | |
| | ) | |
| **ACTIVE DISTRIBUTORS, INC. and** | ) | <u>**ORDER**</u> |
| **BILLY KYRIAZOGLOU,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court is Plaintiff's Declaration and Motion to Vacate Order of Dismissal **(ECF No. 8)** (the "First Motion"), and Plaintiff's Declaration and Motion to Vacate Order of Dismissal and to Validate or Authorize Substituted Service **(ECF No. 9)** (the "Second Motion") (collectively "the Motions"). For the reasons to follow, the Court denies the First Motion as moot, and grants in part and denies in part the Second Motion.

### I. BACKGROUND

This case is a "garden variety copyright infringement action." (ECF No. 8, ¶ 1.) Plaintiff Studio A Entertainment, an adult entertainment producer, alleges that Defendants sell "bootleg" copies of Plaintiff's films that are subject to federal copyright registrations, without Plaintiff's authorization. The Court previously dismissed the case for want of prosecution.

(ECF No. 7.)  Specifically, Plaintiff failed to provide proof of service of the Complaint and Summons, despite the Court's show cause order and extension of time for compliance therewith. (See *id.*)

In the Motions, Attorney Zalon (counsel for Plaintiff) explains that he attempted on numerous occasions to serve Defendant Kyriazoglou (an alleged principal of Defendant Active Distributors, Inc.) by process server at 75 Cosburn Avenue, Apartment 801, Toronto, Ontario, Canada, the residential apartment from which Defendant Active Distributors allegedly operates.  (See ECF No. 8, 2.)  Such service was unsuccessful, as no one answered the door when the process server knocked.  (See ECF No. 8, Ex. A, October 30, 2006 Letter from Process Server to Plaintiff's Counsel.)  The Court eventually issued a show cause order on February 28, 2007, directing Plaintiff to explain why the case should not be dismissed for want of prosecution.

Plaintiff responded to the show cause order, and on March 1, 2007 the Court granted Plaintiff until March 29, 2007 to effect service.  (See ECF Docket Entry for March 1, 2007.)  Plaintiff's Motions also explain that Attorney Zalon subsequently attempted to serve both Defendants by regular mail sent to the same Cosburn Avenue address.  (ECF No. 8, 3.) Moreover, Plaintiff requested service by the Clerk of Courts for the Northern District of Ohio (the "Clerk of Courts" or the "Clerk"), presumably pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii).  (*Id.*)  Attorney Zalon arranged for the Clerk's office to effect service of the Complaint and summons via overnight courier, specifically United Parcel Service ("UPS").  (*Id.*) Attorney Zalon contends that he was unable to use registered or certified mail to accomplish service because Defendants both reside in the Canadian city of Toronto, Ontario, and Canadian law "does not provide for signatures for mail sent from the United States."  (ECF No. 8, 4.)

According to Plaintiff's Motions, the myriad attempts to complete service via the Clerk and UPS were frustrated by Defendant Kyriazoglou's non-cooperation. The Motions and attached exhibits show that UPS attempted delivery on four separate occasions – March 23, March 26, March 27, and March 30, 2007 – but Defendant Kyriazoglou refused to accept the package on each occasion. (ECF No. 8, Ex. D.) Furthermore, on January 9, 2008, Plaintiff attempted to serve Defendants by faxing the Complaint, Summons, and Magistrate's Consent form to the number listed on the business invoices for Defendant Active Distributors, Inc. (ECF No. 9, ¶ 8.)

Unfortunately, Attorney Zalon failed to contemporaneously file the authenticated documentation showing the numerous but frustrated attempts to serve Defendants in March, 2007, nor did he file such documentation for the next five months. Consequently the Court dismissed the case, which, in turn, prompted the First Motion, followed by the Second Motion. To his credit, Attorney Zalon directly shoulders responsibility for not filing the documentary evidence before he filed the instant Motions, citing delays from UPS in responding to his subpoena and then Attorney Zalon's undergoing major surgery in July of 2007. (ECF No. 8, 4.) Plaintiff's Motions argue that the numerous attempts to serve Defendants show compliance with the Court's order, that service was properly effected, and thus the Court should vacate its dismissal order and instead enter default judgment against Defendants.

## II.  LAW AND ANALYSIS

The requirement of proper service of process "is not some mindless technicality." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quotations omitted). Indeed, "the Sixth Circuit and other circuits have held that service of summons and complaint

must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over defendant." *See German Free State of Bavaria v. Toyobo Co.*, No. 1:06-cv-407, 2007 U.S. Dist. LEXIS 19828, *11-12 (W.D. Mich. March 20, 2007) (citing *Mason v. Star Bank*, 1994 Bankr. LEXIS 1394 (N.D. Ohio 1994) (listing circuit cases finding that defendant's actual knowledge of a suit does not satisfy service of process requirements))). Actual knowledge of a complaint, under Sixth Circuit precedent, does not substitute for proper service of process under Rule 4. *See Friedman*, 929 F.2d at 1156.

Rule 4(f) governs international service of process on foreign individuals, while Rule 4(h) governs the same for businesses. Rule 4(h)(2) "authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4(f), in turn, "provides three disjunctive methods for service abroad." *Sibley v. Alcan, Inc.*, 400 F. Supp. 2d 1051, 1055 n.8 (N.D. Ohio 2005).

First, Rule 4(f)(1) allows for service "by any internationally agreed means reasonably calculated to give notice," which typically contemplates service authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Second, under Rule 4(f)(2), if there is no internationally agreed means, or when the international agreement provides for "other" means of service, then service may be effectuated by, *inter alia*, laws of the foreign country, or registered mail by the Clerk of Courts unless prohibited by the laws of the foreign country. Third, Rule 4(f)(3) allows for service "by other means not prohibited by international agreement, as the court orders." Service under Rule 4(f)(3), by its own plain language, "must be (1) directed by the court; and (2) not prohibited by

international agreement. No other limitations are evidence from the text." *Popular Enterprises, LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 561 (E.D. Tenn. 2004).

Notably, it has been held that there is no requirement that a party first exhaust the methods contemplated in Rule 4(f) subsections (1) and (2) before petitioning the court for permission to use alternative means under Rule 4(f)(3). *See MPS IP Serv. Corp. v. Modis Communications*, No. 3:06cv270, 2006 U.S. Dist. LEXIS 34473, *2 (M.D. Fl. May 30, 2006) (citing *Rio Prop.*, 284 F.3d at 1014-16). *See also FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (explaining that Rule 4(f) "does not denote any hierarchy or preference of one method of service over another." (citing *Rio Props.*, 284 F.3d at 1015)).[1] Instead, "'the task of determining when the particularities and necessities of a given case require alternate service of process' is placed squarely within the sound discretion of the district court." *Williams v. Advert. Sex LLC*, 231 F.R.D. 483, 486 (N.D. W. Va. 2005) (citing *Rio Props.*, 284 F.3d at 1016). The court may require a showing by the plaintiff that reasonable efforts to serve the defendant have already been made and that the court's intervention will avoid further unduly burdensome or futile attempts at service. *Id.* (citing *Dagra*, 228 F.R.D. at 534).

The chosen method of service of process, however, must also comport with constitutional notions of due process. To meet this requirement, the method of service must be "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency

---

[1] It does not appear that the Sixth Circuit has addressed the issue of whether a motion for court-authorized alternative service must be preceded by service attempts under Rule 4(f)(1) or (2). Therefore, in the absence of any controlling authority in this circuit, the Court adopts the reasoning of the Ninth Circuit in *Rio Properties*, which found no need for a plaintiff to exhaust sub-rules (1) or (2) before seeking to serve pursuant to Rule 4(f)(3).

of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 314, 314 (1950).

Here, Plaintiff's Second Motion seeks an order validating its previous efforts to serve Defendants, or in the alternative, an order to authorize substituted service. Both the United States and Canada are signatories to the Hague Convention. *See Sibley*, 400 F. Supp. 2d at 1055. Thus, it is clear that service from the Clerk via international courier, as Plaintiff previously attempted, would have been proper under Rule 4(f)(2)(C)(ii), had it been successful.[2] Serving Defendants at their listed place of business is clearly a method reasonably calculated to provide notice of the suit and an opportunity for Defendants to respond. Out of concern for constitutional due process requirements, however, the Court declines to find the previous service attempts sufficient to perfect service of process.

Moreover, alternative service as requested by Plaintiff "is not available absent a Rule 4(f)(3) court decree." *Rio Prop.*, 284 F.3d at 1018. Thus, the Court declines to ratify Plaintiff's attempt to serve Defendants via fax and regular mail as outlined in the Second Motion; the Court's order must <u>precede</u> the attempts at Rule 4(f)(3) alternative service.

On the other hand, the Court will not abide Defendants' continued efforts to evade repeated, reasonable attempts at service of process. As Plaintiff's Motions explain, it has made numerous and repeated good-faith attempts to formally serve Defendants, all of which have been defeated by Defendant Kyriazoglou to this point. The "particularities and necessities"

---

[2]It is also clear that previous attempts to <u>personally</u> serve corporate Defendant Active Distributors would not have been proper, even if purportedly successful; personal delivery abroad on a business entity is prohibited by Rule 4(h)(2).

-6-

of the instant case thus require the Court's intervention and, under the circumstances, the Court will authorize alternative Rule 4(f)(3) service in this case.

### A. Service by Fax

Service by fax does not appear to be prohibited by any international agreement, such as the Hague Convention. Indeed, several federal courts have authorized service by fax pursuant to Rule 4(f)(3). *See, e.g..*, *In re Int'l Telemedia Assoc.*, 245 B.R. 713 (Bank. N.D. Ga. 2000) (authorizing service by fax); *MPS IP Servs. v. Modis*, 2006 U.S. Dist. LEXIS 34473, at *3 (same); *Philip Morris USA, Inc. v. Veles LTD*, No. 06cv2988, 2007 U.S. Dist. LEXIS 19780, *5-10 (S.D.N.Y. March 13, 2007) (same); *Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C06-06572, 2007 U.S. Dist. LEXIS 31299, *7 (N.D. Cal. April 17, 2007) (same). Moreover, Plaintiff represents that Canadian law explicitly allows for service by fax,[3] at least in some circumstances.[4] (See ECF No. 9, 6-7 (citing Canadian Federal Rules §§ 136,140).)

---

[3] Even if Canadian law does not allow for service by fax, United States federal courts have interpreted Rule 4(f)(3) to instruct that "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Rio Props.*, 284 F.3d at 1014. *But see*, *Thomas & Thomas Rodmakers v. Sharpe's, Inc.*, 2007 U.S. Dist. LEXIS 25594, *19 (S.D. Ohio April 5, 2007) ("[W]here a litigant opts not to serve papers through the Central Authority [as provided in the Hague Convention], he violates the Hague Convention to the extent that he otherwise fails to serve papers according to the laws of the receiving country."); *D'Acquisto v. Triffo*, 2006 U.S. Dist. LEXIS 1225, *5 (E.D. Wisc. Jan. 5, 2006) ("The only additional requirement mandated by [Rule 4(f)(3)] is that the foreign country where service is to be executed (here Canada) not prohibit the requested method in an international agreement.") (parenthetical in original).

[4] An argument might be made that Rule 4(f)(2)(A), in conjunction with Canadian Federal Rules § 140(1)(d), might allow for Plaintiff to serve Defendants via fax or regular mail even without the Court's instant Order authorizing alternative service. Plaintiff's Second Motion does not make clear to the Court, however, whether § 140 only provides examples of so-called "substitutional" service as authorized by § 136, or whether § 140 provides independent methods by which service may be effected in Canadian courts of general jurisdiction.

If the methods enumerated in § 140 are only substitutional service, there is a question of whether § 140 applies in the instant case, at least as to corporate Defendant; Section 136 discusses substitutional service "where service . . . that is <u>required to be served personally</u> cannot practicably

Invoices prepared and sent by Defendant Active Distributors, Inc. contain not only a mailing address but telephone and fax numbers as well. (See ECF No. 9, Second Motion, Ex. G, Invoice to Action Software dated Dec. 17, 2004.) Therefore it is reasonable to conclude that if Defendants successfully receive orders for their allegedly copyright-infringing products by fax at the given number, they will also successfully receive service of the Complaint and Summons by the same method. Given the circumstances of the case, a direction to serve process by fax to the number provided on Defendants' invoices is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

The Court therefore authorizes Plaintiff to serve Defendants accordingly. Plaintiff shall provide proof of service under Rule 4(l)(2) by filing a notice of service containing a copy of the successful fax delivery confirmation as generated by the sending fax machine.

**B. Service by Mail**

Article 10(a) of the Hague Convention permits service of documents by international registered mail if the country in which service is made does not object to service by mail. *Thomas & Thomas Rodmakers*, 2007 U.S. Dist. LEXIS 25594, *10 (citing *Sibley*, 400 F. Supp. 2d at 1053). Plaintiff represents that it cannot send international registered mail to Defendants.[5] Plaintiff also contends that Canadian law allows service of documents by <u>ordinary</u>

---

be effected." Under Federal Rule of Civil Procedure 4(h)(2), however, a corporate defendant may NOT be served personally, so it is possible that the substitutional service rule in § 136 does not apply to Defendant Active Distributors, Inc.

The Court need not resolve this nebulous question, however, as this Order authorizes service under Rule 4(f)(3) and therefore under Rule 4(f)(2) is not at issue.

[5]The Court is somewhat confused by Plaintiff's assertion in this regard; several cases authorizing Rule 4(f)(3) alternative service explicitly authorize service on defendants in Canada via

mail, and that service by ordinary mail is effective on the tenth day after mailing. (See ECF No. 9, 7.) Indeed, one federal district court judge recently authorized service under Rule 4(f)(3) on a defendant in Canada via email, fax, and regular mail, finding that service by "regular mail would not appear to offend either the Hague Convention or the laws of British Columbia." *MPS IP Servs.*, 2006 U.S. Dist. LEXIS 34473, *3.

Rule 4(l)(2), however, requires Plaintiff to submit proof of service outside the United States. Here, service would be made under Rule 4(f)(3), and therefore a receipt or some "other evidence satisfying the court that the summons and complaint were delivered to the addressee" must be filed. F.R.C.P. 4(l)(2). Unfortunately, no such receipt would be forthcoming from mailing service via regular mail. Accordingly, Plaintiff's request to serve Defendants via regular international mail is denied.

Instead, Plaintiff may attempt service of process on Defendants – addressed to the physical address provided on Defendants' invoices – via registered mail (whether international or domestic Canadian), via courier service, or via any other method by which some delivery confirmation signed by the addressee would be produced. If such service is successful, Plaintiff shall provide proof of service in accordance with Rule 4(l)(2).

### III. CONCLUSION

First, in light of the representations and duplicative arguments contained in Plaintiff's Motion to Vacate Order of Dismissal **(ECF No. 8)** and Plaintiff's Motion to Vacate

---

registered mail. *See, e.g.*, *Heredia v. Trasport S.A.S., Inc.*, 101 F. Supp.2d 158, 161 (S.D.N.Y. 2000); *Sibley*, 400 F. Supp.2d at 1055; *Williams-Sonoma*, 2007 U.S. Dist. LEXIS 31299, ¶ 6 (authorizing service via email at a given email address, and "via international registered mail" to a Canadian post office box).

Order of Dismissal and Validate or Authorize Substituted Service **(ECF No. 9)**, the Court **DENIES AS MOOT** the First Motion **(ECF No. 8)**.

Second, the Court **GRANTS IN PART** Plaintiff's Second Motion and hereby **VACATES** its previous dismissal Order **(ECF No. 7)**.

Third, given Plaintiff's previous, reasonable efforts to formally serve Defendants, and the reasonable nature of the alternative service it requests, the Court concludes that service of process by fax, registered mail, courier service, or some other method that would generate delivery confirmation signed by Defendants is authorized and warranted under Rule 4(f)(3) of the Federal Rules of Civil Procedure. Accordingly, the Court **GRANTS IN PART** Plaintiff's Second Motion **(ECF No. 9) to the extent** that Plaintiff seeks the Court's authorization under Federal Rule of Civil Procedure 4(f)(3) to serve Defendants by alternative service methods. Plaintiff is hereby **AUTHORIZED AND DIRECTED** to serve process as provided herein.

Fourth, the Court **DENIES IN PART** Plaintiff's Second Motion **(ECF No. 9) to the extent** that Plaintiff seeks the Court's validation of its service attempts predating the instant Order, or Court authorization to serve Defendants by regular mail.

Fifth, and finally, the Court **DENIES IN PART** Plaintiff's Second Motion **(ECF No. 9) to the extent** that Plaintiff moves the Court to enter default judgment in Plaintiff's favor, at least at this juncture.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     January 15, 2008*
**Dan Aaron Polster**
**United States District Judge**